UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-4717 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| SERVICESOURCE INTERNATIONAL, | : **SECURITIES EXCHANGE ACT OF** |
| INC., ANDREW M. BAKER, JANE OKUN | : **1934** |
| BOMBA, JOHN R. FERRON, JOHN R. | : |
| HARRIS, JOHN A. MEYER, GARY B. | : **JURY TRIAL DEMANDED** |
| MOORE, RICHARD G. WALKER, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against ServiceSource International, Inc. ("ServiceSource or the "Company") and the members ServiceSource's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of ServiceSource by affiliates of Concentrix Corporation ("Concentrix").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on June 2, 2022 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Concentrix Merger Sub Inc. ("Merger Sub"), a wholly-owned subsidiary of Concentrix, will merge with and into ServiceSource with ServiceSource surviving as a wholly-owned subsidiary of Concentrix (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 6, 2022 (the "Merger Agreement"), each ServiceSource stockholder will receive $1.50 in cash (the "Merger Consideration") for each ServiceSource share owned.

1. As discussed below, Defendants have asked ServiceSource's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor Stifel Nicolaus & Company ("Stifel") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to ServiceSource's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Stock Exchange, headquartered in this District, and the Company's proxy solicitor, Morrow Sodali LLC, is also headquartered in this District.

**PARTIES**

7. Plaintiff is, and has been at all relevant times, the owner of ServiceSource stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant Andrew M. Baker has served as a member of the Board since February 2020.

9. Individual Defendant Jane Okun Bomba has served as a member of the Board since February 2020.

10. Individual Defendant John R. Ferron has served as a member of the Board since January 2019.

11. Individual Defendant John R. Harris has served as a member of the Board since July 2019.

12. Individual Defendant John A. Meyer has served as a member of the Board since February 2020.

13. Individual Defendant Gary B. Moore has served as a member of the Board since November 2016 and is the Executive Chairman and Chief Executive Officer of the Company.

14. Individual Defendant Richard G. Walker has served as a member of the Board since October 2017.

15. Defendant ServiceSource is a Delaware corporation and maintains its principal offices at 707 17th Street, 25th Floor, Denver, Colorado 80202. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "SREV."

16. The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

18. ServiceSource provides business process-as-a-service solutions worldwide. The Company provides digital solutions, including demand qualification, demand conversion, and account management; customer success solutions, such as onboarding, adoption, and renewals management; CJX solutions; and channel management solutions comprise partner recruitment, partner onboarding and enablement, and partner success management. It also offers sales performance analysis, business case, pricing and contract structuring, data integration, implementation, launch, performance and execution, and client benchmarking and continuous improvement solutions. The Company sells its solutions through sales organization; and serves cloud and SaaS, software and hardware, medical device and diagnostic equipment, and industrial

IoT industries. ServiceSource International, Inc. was founded in 1999 and is headquartered in Denver, Colorado.

19. On May 9, 2022, the Company and Concentrix jointly announced the Proposed Transaction:

> DENVER--(BUSINESS WIRE)--ServiceSource International, Inc. (NASDAQ: SREV), the customer journey experience company, today announced it has entered into a definitive merger agreement pursuant to which Concentrix Corporation (NASDAQ: CNXC), a leading global provider of customer experience (CX) services and technologies, will acquire ServiceSource in an all-cash transaction. ServiceSource stockholders will receive $1.50 per share in cash for each issued and outstanding share of common stock they own. The purchase price represents a 47% premium to ServiceSource's unaffected closing stock price on May 6, 2022.
>
> "We are delighted to join forces with Concentrix and the opportunity it provides for us to execute on our strategy to drive client success by bringing the world's greatest brands closer to their customers," commented Gary B. Moore, ServiceSource's chairman and chief executive officer. "This transaction marks an important milestone in our 20-plus year history and is a testament to the dedication of our employees, the value of our differentiated solutions in the marketplace, and the opportunity to take the business to new heights with a partner that has shared values and culture. I am confident that our world-class employees will gain expanded career and professional growth opportunities as part of a much larger, industry-leading global organization, and I am equally confident that our clients will be even better served through the breadth, depth, and scope of our combined capabilities and scale. We look forward to a seamless transition and executing on a shared vision of the future of CX."
>
> John Harris, ServiceSource's Lead Independent Director, said, "The board of directors is pleased to have reached this agreement, which represents the culmination of a robust process and a comprehensive review of strategic alternatives with our outside legal and financial advisors. This transaction will provide certain and immediate value to our stockholders at a 47% premium."
>
> **Transaction Timing and Approvals**

> Completion of the Merger is not subject to a financing condition and the transaction is expected to close in the second half of fiscal year 2022, subject to the approval of ServiceSource's stockholders and customary closing conditions, including expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.
>
> **Advisors**
>
> Centerview Partners LLC is acting as financial advisor to ServiceSource and Davis Graham & Stubbs LLP is serving as ServiceSource's legal advisor.

\* \* \*

20. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that ServiceSource's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

21. On June 2, 2022, ServiceSource filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

22. The Proxy Statement fails to provide material information concerning financial projections by ServiceSource management and relied upon by Stifel in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Stifel with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that ServiceSource management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

23. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics **and/or** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

24. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable

method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

25. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

26. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

27. With respect to Stifel's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

28. With respect to Stifel's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics for each transactions selected for the analysis.

29. With respect to Stifel's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the implied terminal values for ServiceSource; (iii) the inputs and assumptions

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

underlying the use of perpetuity growth rates of 0% to 3.0%; (iv) the inputs and assumptions underlying the use of the range of discount rates of 13.25% to 15.50%; (v) the Company's weighted average cost of capital; and (vi) and the number of fully-diluted outstanding shares of ServiceSource common stock as of May 5, 2022.

30. With respect to Stifel's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the companies and the premiums of the transactions observed in the analysis.

31. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

34.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

35.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

36.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

37.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of ServiceSource within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of ServiceSource, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of ServiceSource, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of ServiceSource, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue

contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

42. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

43. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

44. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

45. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 6, 2022

**MELWANI & CHAN LLP**

By: _/s/ Gloria Kui Melwani_
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*